S. Brook Millard (7415)
FELLER & WENDT, LLC
1834 East 3100 North
Layton, Utah 84040
T: (801) 499-5060
F: (801) 499-5064
brookm@fellerwendt.com
*Attorneys for William Toon II, individually*
*and as Personal Representative of*
*the Estate of William Toon III,*
*and Jennifer Toon, individually*

C. Peter Sorensen (16728)
**Sykes McAllister Law Offices, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222
pete@sykesmcallisterlaw.com
*Attorneys for Plaintiff Heir S.T.*

## IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF UTAH, STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **WILLIAM TOON II, individually and as PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM TOON III, JENNIFER TOON, individually, TROY BEYNON on behalf of S.T., a minor, individually,** | **COMPLAINT** |
| Plaintiffs, | |
| v. | Case No.: 2:26-cv-00036 |
| **OGDEN CITY, OGDEN POLICE DEPARTMENT, PLEASANT GROVE CITY, PLEASANT GROVE POLICE DEPARTMENT, WEBER-MORGAN COUNTY NARCOTICS STRIKE FORCE, TIMOTHY J. SCOTT, an individual, ANDREW DAUGHETEE, an individual, TYLER O'DOHERTY**, an individual, **CHRISTOPHER PETERSEN,** an individual, and DOES 1-20, individuals, | Judge: <br><br> Magistrate: |
| Defendants. | |

Page 1 of 21

## I.    INTRODUCTION

This case arises from the needless and unconstitutional killing of William Toon III ("Toon"), an unarmed young man, by a multi-agency team of officers who chose escalation over containment, gunfire over time, and a manufactured "hostage" narrative over the objective reality visible on video and audible on radio traffic. The Officers cornered Toon inside a public convenience store, failed to identify themselves and issue lawful commands calibrated to the actual threat, and, within seconds, fired a fusillade of rounds at close range, killing him.

This is not a case about split-second self-defense against an imminent threat. It is a case about a policing decision-tree that predictably ended in death: (1) aggressive interdiction tactics in a confined retail space; (2) failure to de-escalate and failure to coordinate; (3) a rush to deadly force driven by speculation rather than facts; and (4) post-shooting failures that compounded the constitution injury and obscured accountability.

Plaintiffs bring federal civil-rights claims under 42 U.S.C. § 1983 and related causes of action, seeking to vindicate Toon's rights under the Fourth and Fourteenth Amendments to the United State Constitution, and to obtain full compensation for the unlawful, reckless, and objectively unreasonable conduct of officers from Ogden Police Department, Pleasant Grove Police Department and the Weber-Morgan County Narcotics Strike Force.  Acting under color of state law, those officers shot a total of 31 rounds, striking Toon in the head, back, and body no fewer than 17 times. After Toon was mortally wounded, and plainly deceased, the officers handcuffed Toon's lifeless body and placed him into a body bag while still restrained and then permitted those involved in the shooting to participate in, influence, and control the ensuing investigation of their own use of deadly force. This case seeks accountability for an unconstitutional killing masquerading as law enforcement, and to reaffirm the foundational

principle that police officers are not licensed to act as judge, jury, and executioner.

Plaintiffs, complaining of the Defendants, allege and state as follows:

## II.   PARTIES

1. Plaintiff William M. Toon II is a resident of Utah County, Utah. He is the father of William Toon III (deceased) and is statutory heir and wrongful death beneficiary.

2. Plaintiff William M. Toon II is the duly appointed personal Representative of the Estate of William Toon III (deceased).

3. Plaintiff Jennifer Toon is a resident of Utah County, Utah. She is the mother of William Toon III (deceased) and is a statutory heir and wrongful death beneficiary.

4. Plaintiff S.T. is the minor child of William Toon III (deceased) and is a statutory heir and wrongful death beneficiary. Plaintiff S.T. (a minor) is represented by Troy Ray Beynon who is in the process of securing a formal appointment for this role.

5. Defendant Ogden City ("Ogden") is a municipal corporation organized and existing under the laws of the State of Utah, and is a political subdivision thereof, which may be sued in its own name pursuant to law. It acts through its police department and policy makers, and is responsible for policies, practices, customs, training, supervision, discipline, and control of Ogden City Police Department personnel.

6. Defendant Ogden City Police Department ("Ogden PD") is a department of Ogden City and is named for purposes of identifying the law-enforcement agency whose officers and supervisors participated in the events.

7. Defendant Pleasant Grove City ("Pleasant Grove") is a municipal corporation organized and existing under the laws of the State of Utah, and is a political subdivision thereof, which may be sued in its own name pursuant to law. It acts through its police department and policy makers, and is responsible for policies, practices, customs, training, supervision, discipline, and control of Pleasant Grove City Police Department personnel.

8. Defendant Pleasant Grove Police Department ("Pleasant Grove PD") is a department of Pleasant Grove City and is named for purposes of identifying the law-enforcement agency whose officers and supervisors participated in the events.

9. Defendant Weber-Morgan County Narcotics Strike Force ("Strike Force") is a multi-jurisdictional law-enforcement task force operating under color of state law. Strike Force acted through participating agencies, supervisors, and policy makers, and through task-force members assigned to the investigation and apprehension operation that culminated in the Toon killing.

10. Defendant Agent Timothy J. ("Agent Scott") Scott was, at all relevant times, a sworn officer/agent acting under color of state law and assigned to the Strike Force. He participated directly in the confrontation and shooting inside the Sinclair store and/or directly supervised or directed critical tactical decisions. He is sued in his individual capacity

11. Defendant Agent Andrew Daughetee ("Agent Daughetee") was, at all relevant times, a sworn officer/agent acting under color of state law and assigned to the Strike Force. He participated directly in the confrontation and shooting and/or in the tactical containment and lethal-force decision process. He is sued in his individual capacity.

12. Defendant Agent Tyler O'Doherty ("Agent O'Doherty") was, at all relevant times, a sworn officer/agent acting under color of state law and assigned to the Strike Force. He participated directly in the confrontation and shooting and/or in the tactical containment and lethal-force decision process. He is sued in his individual capacity.

13. Defendant Agent Christopher Petersen ("Officer Petersen") was, at all relevant times, a sworn officer acting under color of state law and assigned to the Strike Force and/or a participating department. He participated directly in the confrontation and shooting and/or in the tactical containment and lethal-force decision process. He is sued in his individual capacity.

14. Defendants John Does 1–20 are presently unknown officers, agents, supervisors, dispatchers, and/or policymakers who participated in the planning, containment, confrontation, shooting,

post-shooting conduct, evidence handling, reporting, or ratification of the unconstitutional acts alleged herein. Plaintiffs will amend this Complaint to identify

15. At all relevant times, each Individual Defendant acted under color of state law and within the scope of his employment and/or agency, and each participated in a common plan and course of conduct that violated William Toon III's clearly established constitutional rights.

## III.    JURISDICTION AND VENUE

16. This Court has original subject matter jurisdiction over this civil action pursuant to 28 USC § 1331 and 1343(a)(3)-(4) because, Plaintiff assert claims arising under the Constitution and laws of the United States, including 42 USC § 1983, to redress the deprivation under color of state law, of rights secured by the Fourth and Fourteenth Amendments to the United State Constitution and because Plaintiffs seek equitable relief authorized by federal civil-rights statutes.

17.  This Court further possesses supplemental jurisdiction over Plaintiffs; stat-law claims pursuant to 28 U.S.C. § 1367(a) because those claims for part of the same case or controversy as Plaintiffs; federal claims, arising from a common nucleus of operative fact, namely, the unlawful seizure and killing of William Toon III by law-enforcement officer acting under color of state law.

18. This Court has personal jurisdiction over Defendant Ogden City because it is a municipal entity organized and existing under the laws of the State of Utah, conducts substantial and continuous law-enforcement activities within this District, and employed officers who committed the constitutional violations alleged herein while acting under color of state law.

19.    This Court has personal jurisdiction over Defendant Ogden City Police Department because it is a municipal law-enforcement agency organized under Utah law, conducts law-enforcement operations within this District, and its officers participated in the conduct giving rise to Plaintiffs' claims while acting under color of state law.

20. This Court has personal jurisdiction over Defendant Pleasant Grove City because it is a municipal entity organized and existing under the laws of the State of Utah, conducts substantial and continuous law-enforcement activities within this District, and employed officers who committed the constitutional violations alleged herein while acting under color of state law.

21. This Court has personal jurisdiction over Defendant Pleasant Grove Police Department because it is a municipal law-enforcement agency organized under Utah law, conducts law-enforcement operations within this District, and its officers participated in the conduct giving rise to Plaintiffs' claims while acting under color of state law.

22. This Court has personal jurisdiction over Defendant Weber–Morgan Narcotics Strike Force because it is an interagency law-enforcement task force operating within the State of Utah and this District, and its agents participated in the investigation, pursuit, and confrontation of William Toon III that culminated in his death.

23. This Court has personal jurisdiction over Defendant Timothy J. Scott because, at all relevant times, he was a sworn law-enforcement officer acting under color of state law within the District of Utah and purposefully availed himself of the privileges of conducting law-enforcement activities in this forum, giving rise to Plaintiffs' claims.

24. This Court has personal jurisdiction over Defendant Andrew Daughetee for the same reasons, as he acted under color of state law within this District and directly participated in the conduct that deprived William Toon III of his constitutional rights.

25. This Court has personal jurisdiction over Defendant Tyler O'Doherty because he acted under color of state law within this District and participated in the seizure and use of deadly force against William Toon III.

26. This Court has personal jurisdiction over Defendant Christopher Petersen because he acted under color of state law within this District and participated in the conduct forming the basis of Plaintiffs' claims.

27. This Court's jurisdiction over Plaintiffs' remaining claims is proper pursuant to 28 U.S.C. § 1367, and the exercise of such jurisdiction promotes judicial economy, convenience, fairness, and comity.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)–(2) because all Defendants reside in the State of Utah, a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Weber County, Utah, and the unlawful seizure and killing of William Toon III occurred at a Sinclair gas station located in Riverdale, Utah, within the District of Utah.

29. Plaintiffs timely served a Notice of Claim in compliance with the Utah Governmental Immunity Act, Utah Code Ann. §§ 63G-7-401 to -403, on or about January 10, 2025, providing written notice of the claims asserted herein to all required governmental entities and officials. Plaintiffs have satisfied all jurisdictional and procedural prerequisites to the assertion of their state-law claims. The only written response received was a letter from the Utah Attorney General dated January 22, 2025; no other governmental entity disputed compliance or denied the claims within the statutory period.

## IV.    STATEMENT OF FACTS

30. Toon was a human being, not a training scenario. He was a son, soon to be father, and a member of a community entitled to the full protection of the Constitution.

31. Toon was a troubled 28-year-old man with a history of mental health issues that often led to criminal consequences.

32. After Toon was identified as the victim of an officer involved shooting Weber County Attorney Chris Allred ("Allred") stated via the Weber County Attorney's website that Toon

was allegedly wanted for attempted murder related to a December 10, 2023, stabbing in Utah County.

33. In the 34 days prior to his death, no arrest warrant had been issued for Toon related to the alleged stabbing incident.

34. Upon information and belief, Toon's involvement in the December 10, 2023, incident was a result of Toon being jumped at a house party by perpetrators intent to rob him.  Toon, in an act of self-defense, used scissors found nearby to defend himself.

35. The alleged victim of the "attempted murder" cited by Allred, was interviewed by police in the hospital and refused to press charges.

36. Upon information and belief, Pleasant Grove Police Department, through its officers including but not limited to Detective Ben Knopf, became hyper-focused on finding Toon claiming it was related to the stabbing incident even though the victim refused to press charges.

37. Upon information and belief, Pleasant Grove's interest in Toon was due to alleged drug activity and their failure to effectuate an arrest in Utah county.

38. Pleasant Grove requested warrants be issued to "ping" Toon's cell phone to be able to track his whereabouts.  The warrant to "ping' was granted.

39. After receiving information that Toon may have been in Weber County, Pleasant Grove invoked the assistance of the Weber-Morgan County Narcotics Strike Force.

40. Allred claimed that Toon had allegedly evaded law enforcement on two occasions without proof.

41. On January 14, 2024, officers from the defendant law enforcement agencies located Toon as a passenger in a vehicle traveling on Riverdale Road in Riverdale, Utah.

42. Multiple marked police vehicles followed the vehicle in which Toon was a passenger, observed the vehicle come to a complete stop at a red light, and then affirmatively elected not to initiate a traffic stop, instead allowing the Toon vehicle to proceed to a Sinclair gas station located at 700 W Riverdale Rd in Riverdale, Utah.

43. Dispatch recordings contemporaneous with the surveillance and pursuit of the vehicle Toon was a passenger, contain no identification of Toon as an immediate threat and no report that he was armed and dangerous.

44. Upon arriving at the Sinclair gas station, Toon exited the vehicle and entered the store alone for the purpose of purchasing beverages for himself and the driver of the vehicle, Thomas Cianciolo.

45. At the time Toon entered the store, the interior was occupied by Toon, one unidentified customer, and two store clerks, Brian Adler and Casey Layton.

46. Toon was wearing a brown hooded sweatshirt and carried a substantial amount of cash in the front pocket of the sweatshirt.

47. After the traffic lights turned green and the police vehicles resumed their pursuit of Toon. Multiple police vehicles, including vehicles operated by the named defendants, converged on and entered the Sinclair gas station parking lot.

48. Toon walked to the back of the store and attempted to open the public restroom door, which was locked.  Toon then returned to the front of the store, requested the restroom key from a clerk, was provided a key attached to a window-washer handle, and then turned back toward the restroom.

49. While Toon was inside the store, multiple officers entered the store with their firearms drawn and moved toward Toon.

50. None of the officers who entered the store attempted to provide cover for, evacuate, or otherwise assist the store employees or the unidentified customer in exiting the store before initiating contact with Toon.

51. The officers who entered the store were not wearing traditional police uniforms but were instead wearing tactical clothing with police vests that identified them as law-enforcement officers.

52. None of the officers who discharged their firearms were equipped with activated body-worn cameras at the time of the shooting. The only officer equipped with a body-worn camera was

Pleasant Grove PD Officer Ben Knopf, who, according to the post-shooting investigation, did not discharge his weapon.

53. Officers later asserted that Toon did not comply with commands to surrender and that he kept one hand inside the front pocket of his hooded sweatshirt despite repeated commands to show his hands.

54. Officers further asserted that Toon moved behind the store counter, an area where store employees sought shelter.

55. Agent Timothy J. ("TJ") Scott was the first officer to make direct contact with Toon inside the store.

56. Toon moved behind the counter toward the store's drive-through window area after officers entered the store and blocked his means of exit through the front entrance.

57. At that time, store employees Brian Alder and Casey Layton were positioned together to the left of the drive-through window.

58. While armed with an assault-style rifle, Agent Scott stated that Toon was about to take hostages or engage in a gunfight, despite the absence of any firearm in Toon's possession, and ordered other officers to shoot Toon.

59. Agent Scott screamed words of the effect of, "He's going to take a hostage--Shoot him!" and, without legal justification, fired multiple rounds at Toon.

60. Agents Petersen, O'Doherty, and Daughetee also fired their weapons at Toon.

61. Collectively, the officers fired at least thirty-one (31) rounds at Toon. The investigative report subsequently and erroneously understated the number of shots fired, claiming that only twenty-four rounds were fired.

62. Officers fired their weapons in a manner that placed store employees Brian Alder and Casey Layton in grave danger.

63. Several rounds fired by officers exited the Sinclair building, causing an officer who was detaining Thomas Cianciolo outside the store to forcibly throw Mr. Cianciolo to the ground to avoid being struck by stray bullets.

64. The Buffalo Wild Wings building located at 702 West Riverdale Road sustained bullet strikes to its exterior walls as a result of the officers' errant and excessive gunfire.

65. Toon was struck by gunfire at least seventeen (17) times and collapsed to the floor. He sustained catastrophic gunshot wounds, including a fatal headshot wound, causing extensive cranial trauma and the dispersion of brain tissue and matter across the walls and floor of the store.

66. Eyewitness Brian Adler stated that when the shooting stopped, Toon fell on him and that "his brains were splattered everywhere."

67. Toon's lifeless body was placed in handcuffs, and his body was searched for weapons where none were found.

68. Even though Toon was obviously deceased before being handcuffed, not only was handcuffing unnecessary, but to leave his body in cuffs and place him in a body bag was against protocol, immoral and an unjustifiable desecration of his corpse.

69. Upon information and belief, the post-mortem investigation photos did not in fact show Toon as he was at the time of his death but revealed a "staged" setting to reflect a false narrative created by the involved officer defendants.

70. Toon died because of the gunshot wounds inflicted by the officers.

71. No firearm was recovered from Toon's person following the shooting because he was unarmed.

72. No firearms were recovered from the vehicle in which Toon had been riding before entering the Sinclair gas station.

73. Toon was carrying a large sum of cash in his sweatshirt pocket, later estimated at approximately $20,000, but possessed no weapon.

74. Although the investigators assumed that the drugs found in Cianciolo's vehicle were Toon's, the investigative report has no reference to confirmation of whether the drugs in the vehicle had been Toon's.

75. The officers did not charge Cianciolo with anything drug related.

76. Casey Layton and Bryan Adler, the eyewitness Sinclair Store employees have confirmed that before they provided their statements the police told them that Toon was "a very dangerous man" when it was in fact the officers' actions that endangered the two men by not giving them cover or getting them out of the building before unjustifiably killing Toon.

77. Neither Layton nor Adler had any idea about Toon being good, bad or anything until being informed by the police that he was allegedly dangerous.

78. Upon information and belief, the Sinclair where Toon was killed had 7 or 8 video cameras throughout the store.  The police confiscated all video recording equipment, including cables.

79. After the incident, only Agent Scott provided a statement to investigators; the other three officers refused to be interviewed.

80. According to Investigator Steve Zaccardi, the Weber County Attorney has decided not to file criminal charges against any of the officers involved but has never publicly acknowledged that no charges will be pursued.

81. Toon's death left his child without a father and his family without his companionship, affection and support.

## V.    CLAIMS FOR RELIEF

## Count I - Violation of Fourth Amendment Rights - Excessive Force

42 USC § 1983
(against all defendants)

82. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

83. At all relevant times, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

84. The Fourth Amendment prohibits unreasonable seizures, including the use of excessive deadly force.

85. At all relevant times, the individual defendants were sworn law-enforcement officers acting in their official capacities, scope of employment, and authority when they confronted and shot Toon on January 14, 2024.

86. The conduct of Defendants constituted a "seizure" of Toon within the meaning of the Fourth Amendment to the United States Constitution.

87. Defendants' deprived Toon of rights secured by the Constitution and laws of the United States, including his Fourth Amendment right to be free from unreasonable seizures and the use of excessive force.

88. Defendants seized Toon when they intentionally fired upon him and struck him with bullets, terminating his freedom of movement through means intentionally applied.

89. Deadly force is unreasonable where the suspect poses no immediate threat of serious physical harm to officers or others and where less intrusive means and containment are reasonably available.

90. The individual defendants used deadly force against Toon by firing 31 rounds, striking Toon no fewer than 17 times.

91. The officers' use of deadly force was objectively unreasonable under the totality of the circumstances.

92. The force used against Toon was excessive and unreasonable under the circumstances because no weapon was found on Toon's person after the shooting, suggesting he did not pose an immediate deadly threat to the officers or others that would justify such force.

93. No verified hostage existed under Toon's control at the time deadly force began.

94. No weapon was recovered from Toon's person or from the vehicle in which he had been riding.

95.  Toon did not pose an immediate threat of death or serious bodily harm to officers or others at the time deadly force was used.

96.  At all relevant times, Toon never made any threatening gestures or made any statements to the defendants that he was armed or intended to engage the police in any way.  In fact, the actions Toon took show that his intention was to leave the store, not to confront the officers.

97.  Defendants were within proximity to Toon and, had they been properly trained, equipped, and supervised, could have employed reasonable alternatives to deadly force, including but not limited to, tasers, impact munitions, chemical agents, containment, disengagement, or continued negotiation.

98.  The Defendant officers continued to discharge their firearms even after Toon sustained fatal gunshot wounds, employing overwhelmingly and unnecessary force when no lawful justification existed.

99.  The Defendant Officers shot 31 times, striking Toon 17 times including a fatal headshot that killed Toon immediately, thus taking his life with extreme prejudice when none was warranted.

100.  Defendant Scott's shouted statement that Toon was "going to take a hostage," followed by his command to "shoot him" was unsupported by any objective facts and constituted a reckless and unfounded escalation that precipitated the use of deadly force when the totality of the circumstances would have dictated multiple other less lethal options available to the officers.

101. Defendants further violated clearly established Fourth Amendment law by recklessly creating the circumstances that they later claimed justified the use of deadly force, including

abandoning containment strategies, entering a confined retail space occupied by civilians, and rapidly closing distance without exigency.

102. Defendant's use of deadly force was not reasonable, necessary, or proportionate under clearly established law at the time of the shooting.

103. The handling of Toon's body after he was clearly deceased, including handcuffing Toon's lifeless body, then shoving him in a body bag while cuffed was a gross and unlawful departure from policy when the shooting victim is clearly deceased.

104. As a direct and proximate cause of Defendants' unconstitutional conduct, Toon suffered catastrophic gunshot wounds and death.

105. The individual defendants' actions were willful, malicious, reckless, and taken with callous disregard for Toon's constitutional rights, entitling Plaintiffs to compensatory and punitive damages under 42 U.S.C. § 1983.

106. The Municipal Defendants are liable for the constitutional violations committed by their officers because the violations were caused by official policies, customs, practices, failures to train and supervise, and post-incident ratification, all of which were the moving force behind the deprivation of Toon's Fourth Amendment rights.

## Count II - Municipal Liability - Failure to Train, Supervise, and Discipline

42 USC § 1983

(against Ogden City Police Department, Pleasant Grove Police Department, and Weber-Morgan County Narcotics Strike Force)

107. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

108. At all relevant times, the Municipal Defendants were responsible for establishing, maintaining, implementing, and enforcing policies, customs, and practices governing officer

training, supervision, discipline, accountability, use of force, tactical planning, and post incident review.

109. The constitutional violations suffered by Toon were caused by official policies, longstanding customs, and practices of the Municipal Defendants, including but not limited to failures in training, supervision, discipline, and accountability.

110. The Municipal Defendants failed to adequately train their officers regarding constitutional limits on the use of deadly force, including the requirement that deadly force be used only when a suspect poses an immediate threat of death or serious bodily injury.

111. The Municipal Defendants further failed to train officers regarding containment strategies, de-escalation techniques, and appropriate responses to encounters with individuals who may be unarmed or attempting to disengage rather than confront law enforcement.

112. The Municipal Defendants failed to adequately supervise officers engaged in multi-agency operations, including by permitting officers to act without effective command control, tactical oversight, or coordination designed to minimize the risk of unconstitutional force.

113. The Municipal Defendants failed to ensure compliance with departmental body-worn camera policies and practices, as evidenced by the fact that none of the officers who fired their weapons during the incident were wearing activated body-worn cameras.

114. The Municipal Defendants maintained inadequate accountability mechanisms, as evidenced by the absence of meaningful consequences when multiple officers involved in the shooting refused to be interviewed or provide statements during the post-shooting investigation.

115. Upon information and belief, prior to the shooting of Toon, the Strike Force, including the defendant officers from Ogden City PD operated pursuant to informal customs and practices that tolerated aggressive tactics, minimal oversight, and disregard for constitutional limits, of

which the Municipal Defendants knew or should have known.  The Strike Force, including officers from Ogden City PD were known in the community as a rogue Strike force that bullied citizens and acted above the law on multiple occasions before the Toon shooting took place.

116. Following the shooting, upon information and belief, the Municipal Defendants and their respective agencies, including the Strike Force engaged in conduct that ratified and reinforced the unconstitutional actions of the involved officers, including by approving use of deadly force, failing to discipline or retrain officers, and permitting involved agencies to participate in the investigation of the incident.

117. Upon information and belief, the Municipal Defendants failed to adhere to state-law requirements and standards of practice governing independent investigation of officer-involved shootings, including scene control and witness interviews, thereby undermining accountability.

118. Upon information and belief, the Municipal Defendants failed to follow State law by allowing involved agencies conduct the investigation including the investigation of the crime scene and interviewing witnesses.

119. Upon information and belief, the Municipal Defendants permitted individual defendants to act without regard of the United States and Utah Constitutions and did so with knowledge of such actions before the Toon shooting.

120. The policies, customs, and practices described herein reflected the Municipal Defendants deliberate indifference to the known and obvious risk that officers would use excessive and unconstitutional force.

121. The Municipal Defendants knew or should have known that their failures to train, supervise, discipline, and hold officers accountable would predictably result in violations of constitutional rights.

122. The Municipal Defendants' policies, customs, and practices were the moving force behind the unconstitutional seizure and killing of Toon.

123. The Municipal Defendants adopted these policies or customs with deliberate indifference to their known or obvious consequences.

124. As a direct and proximate result of the Municipal Defendants deliberate indifference, failures in training and supervision, and post-incident ratification, Toon suffered constitutional injuries resulting in his death.

## Count III – Violation of Utah Constitution – Article I, Section 7, 9, and 14

### (against all defendants)

125. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

126. The Utah Constitution provides protections against illegal seizure (Article I, Section 14), excessive force and unnecessary rigor (Article I, Section 9), and denial of due process (Article I, Section 7).

127. Defendants flagrantly violated Toon's Utah Constitutional rights when they illegally seized him.

128. The officers entered the Sinclair store to arrest Toon without a warrant and without exigent circumstances that would justify a warrantless arrest.

129. Defendants flagrantly violated Toon's Utah Constitutional rights by exposing him to excessive force and unnecessary rigor.

130. The officers fired at least 31 rounds at Toon, striking him 17 times, despite him being unarmed.

131. Defendants flagrantly violated Toon's Utah Constitutional rights by denying him due process.

132. The officers acted as judge, jury, and executioner when they shot and killed Toon without giving him an opportunity to surrender or to face trial for his alleged crimes.

133. No remedy for Toon's unconstitutional death exists.

134. The conduct of the defendants warrants the imposition of punitive damages as may be allowed by law.

## Count IV - Wrongful Death (Utah State Law)
### (against all defendants)

135. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

136. Toon died on January 14, 2024.

137. Toon died because of being shot 17 times by the individual defendants.

138. Toon's death was caused by the wrongful act or neglect of defendants.

139. The individual defendants' use of excessive and unreasonable force caused Toon's death.

140. The municipal defendants' failure to adequately train and supervise their officers contributed to Toon's death.

141. Had Toon survived, he would have been entitled to maintain an action for personal injuries against defendants.

142. Had Toon survived, he would have been entitled to bring an action for the personal injuries he suffered because of being shot 17 times.

143. Plaintiffs are the prospective personal representatives of Toon's estate.

144. As the prospective personal representatives of Toon's estate, Plaintiffs are entitled to bring this action on behalf of Toon's heirs, including his child.

## Count V - Survival Action (Utah State Law)
### (against all defendants)

145. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 110 as if fully set forth herein.

146. Toon suffered personal injury before death.

147. Toon suffered severe physical pain, emotional distress, and mental anguish due to being shot 17 times before his death.

148. The injury was caused by the wrongful act or negligence of defendants.

149. The individual defendants' use of excessive and unreasonable force caused Toon's injuries.

150. The municipal defendants' failure to adequately train and supervise their officers contributed to Toon's injuries.

151. Toon would have been entitled to recover damages for the injury had death not ensued.

152. Had Toon survived, he would have been entitled to recover damages for his physical pain, emotional distress, and mental anguish.

153. Plaintiffs are the prospective personal representatives of Toon's estate.

154. As the prospective personal representatives of Toon's estate, Plaintiffs are entitled to bring this action on behalf of the estate.


## VI.    PRAYER FOR RELIEF

A. Compensatory damages against all defendants for the loss of life, pain and suffering experienced by Toon before his death, loss of companionship, loss of financial support, funeral and burial expenses, and other economic and non-economic losses suffered by the plaintiffs because of Toon's death, in an amount to be determined at trial.

B. Punitive damages against the individual defendants for their willful, wanton, and reckless conduct in using excessive force against Toon, in an amount to be determined at trial.

C. Attorneys' fees and costs pursuant to 42 USCS § 1988.

D. Declaratory relief that the defendants' actions violated Toon's constitutional rights under the Fourth Amendment to the United States Constitution and Article I, Sections 7, 9, and 14 of the Utah Constitution.

E. Injunctive relief requiring the municipal defendants to implement appropriate policies, procedures, and training regarding the use of force, particularly in situations involving suspects who may be unarmed or not posing an immediate threat.

F. Such other relief as the Court deems just and proper.

## VII.   JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 13th day of January 2026.

FELLER & WENDT, LLC


/s/S. Brook Millard
S. BROOK MILLARD
*Attorneys for Plaintiffs*